## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

TYRONE LESLIE FARRIS,              )
                                          )
       Plaintiff,              )
                                          )
v.              )    **Case No. CIV-12-1099-W**
                                          )
C/O J. FRAZIER et al.,              )
                                          )
       Defendants.              )

## REPORT AND RECOMMENDATION

Plaintiff Tyrone Leslie Farris, a state prisoner appearing pro se, brings this federal civil rights action against 14 defendants, alleging violations of the United States Constitution and of other federal laws. United States District Judge Lee R. West has referred this matter to the undersigned magistrate judge for initial proceedings pursuant to 28 U.S.C. § 636(b).

Defendants Jennifer Frazier, Denise Alston, Kristie Bearden, Billy Gibson, Captain R. Jones, GEO Group Inc., Hector Rios, Dean Caldwell, Rick Whitten, Richard Tinker, John Doe (food supervisor), and Nancy Fennell (collectively, "the MSJ Defendants") have moved for summary judgment on or dismissal of Plaintiff's claims. *See* Defs.' Mot. Summ. J. (Doc. No. 70) ("Defs.' MSJ"). Plaintiff has responded. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. (Doc. No. 82) ("Pl.'s MSJ Resp."). Defendant Justin

Jones[1] has filed a motion to dismiss, to which Plaintiff has responded.  *See* J. Jones' Mot. to Dismiss (Doc. No. 72) ("Def. J. Jones' MTD"); Pl.'s Resp. to J. Jones' Mot. to Dismiss (Doc. No. 83) ("Pl.'s MTD Resp.").  Defendants additionally have filed a Special Report ("S.R.," Doc. No. 69) in accordance with the Court's order and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  Plaintiff has filed a motion seeking a temporary restraining order or preliminary injunction; a response was filed by the MSJ Defendants.  *See* Pl.'s Mot. Prelim. Inj. (Doc. No. 90); Defs.' Resp. (Doc. No. 91).

Having considered the arguments, pleadings, and evidentiary materials submitted by the parties, the undersigned recommends that (i) claims raised against Defendant Justin Jones in his official capacity seeking monetary damages be dismissed and (ii) summary judgment be granted in favor of the MSJ Defendants and Defendant Justin Jones on all of Plaintiff's remaining claims.  The undersigned further recommends that (iii) Plaintiff's motion for a temporary restraining order or preliminary injunction be denied, and (iv) all claims against Defendant "Ms. Schuler" be dismissed without prejudice in accordance with Federal Rule of Civil Procedure 4(m).

---

[1] Plaintiff's Amended Complaint names "Justin Jones, Director of Department of Corrections" as a defendant.  *See* Am. Compl. (Doc. No. 34) at 1 (capitalization altered). On January 17, 2014, Robert Patton replaced Justin Jones as Director of the Oklahoma Department of Corrections.  Although the undersigned refers to Defendant "Justin Jones" in this Report and Recommendation, Director Patton should be substituted as Defendant on all official-capacity claims against Defendant J. Jones in any later proceedings.  *See* Fed. R. Civ. P. 25(d).

Plaintiff's claims arise out of events occurring at Lawton Correctional Facility ("LCF") in Lawton, Oklahoma, including a physical altercation between other inmates and Plaintiff that occurred July 5, 2012, in and near the LCF law library. *See* Am. Compl. (Doc. No. 34) at 2-27.[2]  In Plaintiff's initial complaint, Plaintiff named four Defendants[3] and asserted factual allegations in support of three constitutional claims based upon prison officials' actions taken in connection with the July 5, 2012 prison fight. *See* Compl. (Doc. No. 1).  In Plaintiff's superseding Amended Complaint, Plaintiff again named these four Defendants and asserted these three claims (the "Law Library Claims"), but further named 10 additional Defendants[4] and asserted four additional legal claims (the "Halal Diet Claims").  *See* Am. Compl. at 2-27; Am. Compl. Ex. 1 (Doc. No. 34-2); Am. Compl. Ex. 2 (Doc. No. 34-3); Am. Compl. Ex. 3 (Doc. No. 34-4).  The new allegations of the Amended Complaint are unrelated to the Law Library Claims; rather, these allegations support Plaintiff's claimed violations of the Constitution and federal

---

[2] References to filings use the ECF pagination.

[3] The four Defendants initially named are Frazier, Alston, Bearden, and Gibson.  *See* Compl. at 1.

[4] The 10 Defendants subsequently named are Captain R. Jones, J. Jones, Geo Group Inc., Rios, Caldwell, Whitten, Tinker, John Doe, Fennell, and Ms. Schuler.  *See* Am. Compl. at 1.

statutes with respect to his efforts to receive a halal religious diet[5] at LCF beginning in early 2012. *See* Am. Compl. at 7-17, 21-27; Am. Compl. Ex. 3.

In Plaintiff's Law Library Claims, Plaintiff alleges that he had been employed at the LCF law library since February 1999 as a law clerk. Am. Compl. at 2, 5-6. According to the Amended Complaint, Plaintiff was "attacked" physically by other inmates while at his law library job on July 5, 2012. Am. Compl. at 2-3, 11, 18-19. As a result of the prison officials' investigation, Plaintiff faced disciplinary proceedings and was removed from his law library job from July 5 to December 26, 2012, based upon Plaintiff's alleged actions in connection with the prison fight. Am. Compl. at 2-7, 11-13. He alleges that he received a disciplinary "misconduct" that later was dismissed and improperly lost 375 days of earned credits.[6] *See* Am. Compl. at 28; *see also id.* at 2-4, 6-7. Plaintiff asserts claims that certain Defendants violated his First Amendment, equal

---

[5] As explained by the Tenth Circuit:

> There are varying Islamic dietary traditions among Muslims, some more strict than others. According to the Islamic Food and Nutrition Council of America (IFANCA) and Islamic Services of America (ISA), a "halal," or "lawful" diet, prohibits items deemed "haram" (or "unlawful"), including pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products. Food containing gelatin, enzymes, and emulsifiers are questionable because of their unclear origins; they may be halal or haram.

*Abulhaseeb v. Calbone*, 600 F.3d 1301, 1313 (10th Cir. 2010) (citation omitted).

[6] Pursuant to Title 57, Section 138 of the Oklahoma Statutes, prisoners in Oklahoma earn credits, for good conduct and other considerations, that serve to reduce their terms of imprisonment. Okla. Stat. tit. 57, § 138. One earned credit equates to one fewer day in prison. *Id.* § 138(A).

protection, and due process rights by taking discriminatory, retaliatory actions against Plaintiff and failing to properly apply the prison disciplinary process in proceedings conducted regarding Plaintiff's involvement in the July 2012 prison fight. *See* Am. Compl. at 1-7, 17-21 (referencing First Amendment; equal protection; due process; 42 U.S.C. §§ 1981, 1983, 1985, and 1986; retaliation; and conspiracy).

In Plaintiff's Halal Diet Claims, Plaintiff alleges violations of his rights under the First, Eighth, and Fourteenth Amendments,[7] as well as violations of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[8] *See* Am. Compl. at 7-11, 13-17, 21-27. Plaintiff asserts that Defendants' refusal to provide Plaintiff an adequate and proper halal diet that accommodates his food allergies: (1) constitutes deliberate indifference to his needs that has caused him great physical harm; (2) deprived him of equal protection under the law; and (3) has substantially burdened his ability to

---

[7] Plaintiff also cites the Fifth Amendment in connection with his Halal Diet Claims. *See* Am. Compl. at 21. As no federal officials are involved, however, his due process challenges implicate his rights under the Fourteenth Amendment, not the Fifth Amendment. *See, e.g.*, *Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993).

[8] 42 U.S.C. §§ 2000cc to 2000cc-5. Plaintiff also attempts to invoke the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4. The U.S. Supreme Court, however, has declared that RFRA, which prohibits "[g]overnment" from placing a "substantial[] burden" on a person's exercise of religion without compelling justification, is unconstitutional as applied to states and their subdivisions. *See City of Boerne v. Flores*, 521 U.S. 507, 511, 534-35, 536 (1997); 42 U.S.C. § 2000bb-1. Moreover, the relevant portions of RFRA were incorporated into RLUIPA. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1656 (2011); *Hemphill v. Jones*, No. CIV-11-1192-HE, 2012 WL 7059643, at *1 n.5 (W.D. Okla. Oct. 31, 2012) (report and recommendation of Roberts, J.), *adopted*, 2013 WL 501353 (W.D. Okla. Feb. 11, 2013).

practice his sincerely held religious beliefs. *See* Am. Compl. at 21-27.

In his request for relief, Plaintiff seeks nominal, compensatory, and punitive damages, as well as declaratory and injunctive relief with respect to the Halal Diet Claims. *See* Am. Compl. at 29-31.[9]

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255

---

[9] Although Plaintiff asserts as factual support for his Law Library Claims that he was "wrongfully convicted" in the prison disciplinary proceedings and that LCF officials improperly removed a sum of earned credits, Plaintiff seeks only monetary compensation on these legal claims. *See* Am. Compl. at 20-21, 28-31. Plaintiff does not seek to have the allegedly lost credits restored and does not challenge the fact or duration of his confinement. *See* Am. Compl. at 2-7, 17-21, 29-30. Instead, Plaintiff "challenges prison policy . . . and certain procedures affecting the conditions of his confinement"—e.g., the LCF officials' allegedly racially discriminatory decision to end Plaintiff's employment at the law library. *See Requena v. Roberts*, 552 F. App'x 853, 854 (10th Cir. 2014) (citing *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809 (10th Cir. 1997)); Am. Compl. at 2-7, 17-21. Plaintiff's Amended Complaint therefore properly characterizes his constitutional challenges to the prison's disciplinary proceedings as civil rights claims brought pursuant to 42 U.S.C. § 1983 and accompanying federal statutes, rather than as a federal habeas corpus proceeding seeking relief under 28 U.S.C. § 2241. *See McIntosh*, 115 F.3d at 811-12; *Requena*, 552 F. App'x at 855; Am. Compl. at 1, 10.

(10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or
- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

The MSJ Defendants titled their filing "Motion to Dismiss/Motion for Summary Judgment," and, with respect to the issue of Plaintiff's exhaustion of administrative remedies, rely on materials outside of the Amended Complaint and public record. *See* Defs.' MSJ (citing Special Report and Exhibits to Special Report throughout). In opposition, Plaintiff—whose response is titled "Response to Dismiss/Motion for Summary Judgment"—expressly relies upon the summary judgment standards of Federal

Rule of Civil Procedure 56 and presents over 70 pages of evidentiary material. *See* Pl.'s

MSJ Resp. at 1, 3-4, 24-26, 28, 30; Pl.'s MSJ Resp. Ex. 1 (Doc. No. 82-1); Pl.'s MSJ

Resp. Ex. 2 (Doc. No. 82-2). It is evident from Plaintiff's Response that Plaintiff was on

notice to present and did present all material pertinent to the MSJ Defendants' dispositive

motion and that Plaintiff desired the Court to consider materials outside of the pleadings

in ruling on such motion. Accordingly, the undersigned has treated the motion as one for

summary judgment with respect to the issue of exhaustion. *See* Fed. R. Civ. P. 12(d),

56(c)(1); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

ANALYSIS

## I. Whether Defendant Justin Jones Is Entitled to Dismissal of Certain Claims on the Basis of Eleventh Amendment Immunity

Citing the Eleventh Amendment of the U.S. Constitution, Defendant Justin Jones

has moved to dismiss Plaintiff's claims to the extent they seek money damages from him

in his official capacity as ODOC Director. *See* Def. J. Jones' MTD at 1, 6-8; Am.

Compl. at 7, 21-27, 30-31; Fed. R. Civ. P. 12(b)(1), (b)(6). The Court therefore is

obligated to address whether Defendant Justin Jones enjoys immunity from suit. *See U.S.

ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state

defendant raises the issue, "addressing the threshold jurisdictional matter [is]

obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000)

(holding that Eleventh Amendment immunity presents a jurisdictional bar when

effectively asserted).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh

Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the immunity is abrogated by Congress or the state unequivocally waives its immunity. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). The State of Oklahoma has not waived its relevant Eleventh Amendment immunity from suit in federal courts. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998); *Sossamon*, 131 S. Ct. at 1663; *see also Hemphill v. Jones*, 2012 WL 7059643, at *3. Nor has Congress abrogated state immunity through enactment of § 1983 or RLUIPA. *See Quern v. Jordan*, 440 U.S. 332, 342-45 (1979) (§ 1983); *Sossamon*, 131 S. Ct. at 1661 (RLUIPA). Thus, the State of Oklahoma's Eleventh Amendment immunity from § 1983 and RLUIPA claims in federal court remains intact.

Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see also ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *abrogated on other grounds as recognized in Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted). Here, although not named as a defendant, the relevant state agency is ODOC because Defendants Justin Jones was employed by that agency during the circumstances giving rise to this lawsuit. *See* Am. Compl. at 7; J. Jones' MTD at 4, 7. The Tenth

Circuit has stated that it considers ODOC an arm of the State of Oklahoma. *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988) (agreeing with party's concession that ODOC was entitled to Eleventh Amendment immunity as an arm of the state). Furthermore, ODOC's powers, budgetary responsibilities, and funding establish that it is an arm of the State of Oklahoma. *See, e.g.*, Okla. Stat. tit. 57, §§ 502-04, 505-08, 509, 510; Okla. Stat. tit. 62, §§ 34.42, 34.50-.52, 34.57; Act of May 20, 2013, ch. 313, §§ 100-102, 2013 Okla. Sess. Law Serv. 1585 (West). Thus, ODOC is protected from suit in federal court by Eleventh Amendment immunity. *See also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *ANR Pipeline Co.*, 150 F.3d at 1187.

Defendant Justin Jones, as an employee of ODOC, is partially protected by Eleventh Amendment immunity by virtue of ODOC's immunity. "[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.' This Eleventh Amendment bar also applies to RLUIPA claims." *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The only relief available to Plaintiff under RLUIPA is declaratory and injunctive relief against Defendant Justin Jones in his individual capacity. *See Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013). Accordingly, Plaintiff's claims seeking

monetary relief from Defendant Justin Jones in his official capacity[10] are barred and should be dismissed because, based on Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over such claims.

## II. Whether Defendants Are Entitled to Summary Judgment on All Remaining Claims as a Result of Their Affirmative Defense That Plaintiff Failed to Exhaust Administrative Remedies

The MSJ Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a). *See* Defs.' MSJ at 3-6, 7-8; S.R. at 7-9; *see also Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

### A. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 "or any other Federal law" may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can

---

[10] The Amended Complaint indicates that Plaintiff's claims are asserted against Defendant Justin Jones only in his official capacity. *See* Am. Compl. at 7. Even if pleaded, any individual-capacity RLUIPA claim against this Defendant would have been subject to dismissal, as "there is no cause of action under RLUIPA for individual-capacity claims." *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012).

function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

### B. *The Oklahoma Department of Corrections' Offender Grievance Process*

The Oklahoma Department of Corrections ("ODOC") has adopted an Offender Grievance Process, OP-090124, through which a prisoner in its custody may seek administrative decisions or responses to complaints. *See* S.R. Ex. 34 (Doc. No. 69-34), OP-090124 (eff. May 24, 2011). The ODOC Grievance Process requires an inmate initially to attempt informal resolution of the complaint by speaking to an appropriate staff member within three days of the relevant incident. *Id.* § IV(A). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id*. § IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal Grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a Grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later. *Id.* § V(A)(1). The Grievance is submitted to either the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"). *Id.* § V(B)(1). This level may be bypassed only if the Grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id*. § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a Grievance Appeal. If dissatisfied with the response to a Grievance, the inmate may file a Grievance

Appeal within fifteen days of the date of the response. *Id*. § VII(A), (B). The Grievance Appeal is submitted to the Administrative Review Authority ("ARA") or, if a medical grievance, the Chief Medical Officer ("CMO"). *Id*. § VII(B). A Grievance Appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority that would be grounds for reversal. *Id.* § VII(A). The ruling of the ARA or CMO is final and concludes the administrative remedy procedures available through ODOC. *Id*. § VII(D).

The ODOC Grievance Process includes mechanisms for prisoners to seek relief if they fail to receive a response from a Request to Staff or a Grievance. If there has been no response to a Request to Staff "in 30 calendar days of submission," the inmate may file a Grievance with the facility's Reviewing Authority on the ground of non-responsiveness. *Id.* § IV(B)(7). If there has been no response to a Grievance within thirty days of its submission, the inmate may send a Grievance to the ARA or the CMO on the ground of non-responsiveness. *Id.* § V(C)(4).

### C. *Plaintiff's Efforts to Exhaust Administrative Remedies*

Plaintiff undisputedly submitted numerous documents to LCF officials, purportedly utilizing the ODOC Grievance Process framework, that requested relief on the fundamental dissatisfactions underlying Plaintiff's Law Library Claims and Halal Diet Claims—including allegedly unconstitutional disciplinary proceedings, consequent

effects on conditions of confinement, and allegedly unconstitutional refusals of adequate and proper halal meals.[11] The record in this matter shows that despite making these submissions, Plaintiff failed to properly exhaust his administrative remedies with respect to his constitutional and federal-law claims,[12] as outlined below.

1. Administrative Relief Sought for Wrongs Cited in Law Library Claims

- *Request to Staff of July 27, 2012*

On July 27, 2012, Plaintiff filed a Request to Staff seeking to have his misconduct dismissed and to be allowed to return to his job at the prison law library. *See* Am. Compl. Ex. 2, at 7. A staff member responded on August 1, 2012, that the misconduct was dismissed and that the law library staff would determine whether to rehire Plaintiff. *See* Am. Compl. Ex. 2, at 7. There is no contention by Plaintiff or indication in the record that Plaintiff filed a formal Grievance with the Reviewing Authority regarding this response. Nor did Plaintiff seek relief from the ARA, through a Grievance Appeal or otherwise. S.R. Ex. 12 (Doc. No. 69-12), Minyard Law Library Claims Aff. of May 29, 2013 ("Minyard LLC Aff.").

---

[11] *See* Am. Compl. at 28-29; Defs.' MSJ at 3-6; Pl.'s Resp. at 15-19; Doc. Nos. 34-2, 34-3, 34-4, 69-10, 69-11, 69-29, 69-31, 69-32, 82-1, 82-2.

[12] Assuming Plaintiff had exhausted his claims against the MSJ Defendants, it is unclear whether a cause of action under RLUIPA would lie against a private corporation such as Geo Group Inc. or its employees. *See Cutter v. Wilkinson*, 544 U.S. 709, 715-16 & n.4 (2005); *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013); *Raheem v. Miller*, No. 09-80-C, 2010 WL 2595112, at *12 & n.29 (W.D. Okla. May 14, 2010) (report and recommendation of Bacharach, J.), *adopted*, 2014 WL 2595082 (W.D. Okla. June 23, 2010); *Dean v. Corr. Corp. of Am.*, 540 F. Supp. 2d 691, 693-95 (N.D. Miss. 2008).

- *Request to Staff of August 8, 2012*

Plaintiff next filed a Request to Staff on August 8, 2012, again requesting that he be permitted to resume work at the law library. *See* S.R. Ex. 10 (Doc. No. 69-10) at 2, 4. On September 10, 2012, Plaintiff filed a Grievance (No. 12-618) regarding the lack of any response to this Request to Staff. *See* S.R. Ex. 10, at 3-4; OP-090124 § IV(B)(7). Two days later (i) a staff member responded to the Request to Staff by stating that Plaintiff's behavior "is unacceptable" in the law library environment and advising him to seek placement in the job pool; and (ii) Grievance No. 12-618 was returned unanswered by the Reviewing Authority because a staff member had since responded to the Request to Staff. *See* S.R. Ex. 10, at 2, 6.

Plaintiff then filed a Grievance regarding this resolution of the August 8, 2012 Request to Staff in which he alleged that removal from his law library job "is a form of retaliatory action." *See* Am. Compl. Ex. 1, at 4. The Reviewing Authority responded to this Grievance, also assigned Number 12-618, on a form used for Grievances that are "returned unanswered." *See* Am. Compl. Ex. 1, at 3. The response recited that Plaintiff's Grievance was being returned because his Grievance "has already been answered." Am. Compl. Ex. 1, at 3. By this point, however, the gravamen of Plaintiff's Grievance was not the staff member's nonresponsiveness but Plaintiff's inability to resume his law library employment. *See* Am. Compl. Ex. 1, at 3, 4. As to that contention, the Reviewing Authority's response to the Grievance stated: "you are denied." *See* Am. Compl. Ex. 1, at 3. Plaintiff did not appeal the disposition of Grievance No. 12-618 (in either of its variations) to the ARA. Minyard LLC Aff.

- *Request to Staff of August 13, 2012*

Plaintiff submitted with his summary judgment response a Request to Staff dated August 13, 2012, in which Plaintiff requested that he be returned to his job at the law library. *See* Pl.'s MSJ Resp. Ex. 1, at 23. There is no indication on the Request to Staff that a staff member ever responded; however, there additionally is no evidence on the face of the document that Plaintiff actually submitted the Request to Staff to a staff member for resolution. *See* Pl.'s MSJ Resp. Ex. 1, at 23. Even assuming for summary judgment purposes that Plaintiff did submit the Request to Staff to a staff member on or about August 13, 2012, there is no evidence in the record that Plaintiff ever filed a Grievance on the ground of nonresponsiveness. Further, Plaintiff did not seek relief on this Request to Staff from the ARA. Minyard LLC Aff.

- *Request to Staff of December 3, 2012*

Plaintiff filed a Request to Staff on December 3, 2012, alleging that although the disciplinary misconduct he received after the July 2012 prison fight had been dismissed, Plaintiff's record still needed to be corrected to return 365 days of credit toward his release date and that he should be returned to his former pay grade. *See* S.R. Ex. 11 (Doc. No. 69-11) at 2-3. A staff member responded on December 6, 2012, "It has been dismissed." *See* S.R. Ex. 11, at 2 (capitalization altered). There is no evidence that Plaintiff either filed a Grievance, or sought further relief from the ARA, *see* Minyard LLC Aff., in connection with the response to this Request to Staff.

- *Requests to Staff of January 31, 2013*

On January 31, 2013, Plaintiff filed a Request to Staff again seeking to be returned to his law library job. *See* Pl.'s MSJ Resp. Ex. 1, at 26-27. According to the Request to Staff, Plaintiff had begun working at the law library again on December 26, 2012, but then was informed that he could not come to work. *See* Pl.'s MSJ Resp. Ex. 1, at 26-27. The staff member responded, "As you well know a job is a privile[]ge, not a 'right.' That past behavior is unacceptable." *See* Pl.'s MSJ Resp. Ex. 1, at 26. On that same date, Plaintiff submitted a Request to Staff to a different staff member in which he likewise requested to be returned to the law library. *See* Pl.'s MSJ Resp. Ex. 1, at 24-25. A staff member responded the next day that Plaintiff had been reassigned to the law library. *See* Pl.'s MSJ Resp. Ex. 1, at 24.

There is no evidence that Plaintiff filed a Grievance regarding either of the Requests to Staff submitted on January 31, 2013. Nor did Plaintiff seek further relief from the ARA. Minyard LLC Aff.

## 2. Administrative Relief Sought for Wrongs Cited in the Halal Diet Claims

- *Request to Staff of March 26, 2012*

On January 19, 2012, Plaintiff submitted a special diet form to LCF officials requesting that he receive halal meals. *See* S.R. Ex. 25, Doc. No. 69-25, at 2-3. This request initially was denied on March 22, 2012. *See* S.R. Ex. 25 (Doc. No. 69-25) at 2-3. Plaintiff then filed a Request to Staff on March 26, 2012, requesting again to be placed on the halal diet list. *See* Pl.'s MSJ Resp. Ex. 1, at 35. This request was granted on March 28, 2012, and Plaintiff was placed on the halal diet list. *See* Pl.'s MSJ Resp. Ex. 1, at 35;

S.R. Ex. 25, at 4. There is no indication in the record that Plaintiff pursued a Grievance regarding the disposition of the Request to Staff or sought further relief from the ARA. *Cf.* S.R. Ex. 30 (Doc. No. 69-30), Minyard Halal Diet Claims Aff. of May 29, 2013 ("Minyard HDC Aff.").

- *Request to Staff of April 17, 2012*

Plaintiff next submitted a Request to Staff on April 17, 2012, complaining that he had received a halal meal that was "contaminated" and not compliant with ODOC's "prepackaged, certified" halal meal policy. *See* S.R. Ex. 29 (Doc. No. 69-29) at 2-3. An LCF staff member responded that "the [halal] meals being served – are those guid[e]lines set forth by the Oklahoma Department of Corrections." S.R. Ex. 29, at 2. Plaintiff then filed Grievance No. 12-374, requesting a prepackaged halal diet to meet his "[r]eligious held belief." *See* S.R. Ex. 29, at 4-5. The Reviewing Authority sent Plaintiff a Grievance Response dated May 25, 2012. S.R. Ex. 29, at 6. The Reviewing Authority granted relief, stating that an investigation had been completed, that the applicable ODOC halal meal protocols were followed, and that "[Plaintiff] will be receiving [his] approved Halal Diet." *See* S.R. Ex. 29, at 6.

Not satisfied with the Grievance Response, Plaintiff appealed to the ARA on June 5, 2012. *See* S.R. Ex. 29, at 7-8. On appeal, Plaintiff asserted that certain of the halal meal protocols cited by the Reviewing Authority in the Grievance Response had been "rejected by Federal District Court in two civil act[ion]s" and had been "replaced with new kosher/halal protocols." *See* S.R. Ex. 29, at 7 (capitalization altered). Plaintiff further argued that the new protocols were not being followed, despite ODOC Director

Justin Jones agreeing to these protocols in the civil actions, and requested that he be provided a nutritionally balanced "Halal/Kosher diet." *See* S.R. Ex. 29, at 8. The ARA returned the Grievance Appeal unanswered on June 14, 2012, citing two grounds: (i) additional issues were submitted in the Grievance Appeal that had not been raised in the underlying Grievance; and (ii) Plaintiff could not appeal relief granted (rather than denied) on the Grievance and "must comply with OP-090124"—i.e., Plaintiff must grieve anew any complaint arising from changed conditions brought about by, or incidents occurring after, being granted relief on his Grievance, as those circumstances did not exist at the time of Plaintiff's initial Request to Staff and Grievance. *See* S.R. Ex. 29, at 9; Minyard HDC Aff.; *cf.* OP-090124 § IV(B)(2) (requiring Request to Staff to be submitted within 7 days of incident).

Plaintiff did not resubmit his Grievance Appeal to include only the issues that had been considered on Grievance No. 12-374 or to otherwise attempt to correct its errors. Minyard HDC Aff.; *see also* OP-090124 §§ VII(B)(1)(e), VII(B)(5). Plaintiff did initiate the informal grievance process several additional times through Requests to Staff, as outlined below, but there is no evidence in the record showing that Plaintiff followed through properly on any of these submissions to seek relief from the ARA. *Cf.* Minyard HDC Aff.

• *Request to Staff of May 14, 2012*

Plaintiff submitted a Request to Staff on May 14, 2012—while his Grievance No. 12-374 was pending—again requesting that he receive halal meals that are prepackaged in accordance with the "new protocol" of ODOC. *See* Am. Compl. Ex. 3, at 15-16.

Defendant Tinker, the LCF Chaplain, responded: "Chaplains have nothing to do with the preparation & delivery of meals." *See* Am. Compl. Ex. 3, at 15. There is no evidence or contention that Plaintiff filed a consequent Grievance or that Plaintiff sought further relief on this Request to Staff from the ARA. *Cf.* Minyard HDC Aff.

- *Request to Staff of July 25, 2012*

Plaintiff attached to his summary judgment response a Request to Staff dated July 25, 2012, in which Plaintiff alleged that he had received a memo from LCF officials "interpret[ing] my religious beliefs as a test of my religious diet." *See* Pl.'s MSJ Resp. Ex. 1, at 37 (capitalization altered). Plaintiff asserted that, although he had been permitted to purchase kosher items in the past by "Caldwell, Deputy Warden," he was now restricted from purchasing certain kosher items at the LCF canteen, although his Islamic tenets allowed for all Muslims to eat kosher food. Pl.'s MSJ Resp. Ex. 1, at 37-38. Plaintiff therefore requested that he be able to "practice [his] tenets of faith by purchasing kosher items from canteen." Pl.'s MSJ Resp. Ex. 1, at 37.

There is no indication on the document that Plaintiff ever submitted this Request to Staff to an LCF staff member, and Defendant Dean Caldwell denies ever seeing this Request to Staff. *See* Pl.'s MSJ Resp. Ex. 1, at 37-38; S.R. Ex. 24 (Doc. No. 69-24) (Caldwell Aff. of May 31, 2013). In any event the record does not support a finding that Plaintiff filed a Grievance or otherwise pursued relief on the Request to Staff on the basis of nonresponsiveness or any other ground. *Cf.* Minyard HDC Aff.

- *Request to Staff of August 3, 2012*

Plaintiff submitted a Request to Staff on August 3, 2012, again lodging a complaint regarding an LCF policy that allegedly was preventing Plaintiff from purchasing kosher items at the LCF canteen. *See* Pl.'s MSJ Resp. Ex. 1, at 32. Plaintiff received a response on August 10, 2012: "Enclosed: Halal Commissary Menu dated 8-10-12[.] This is the Menu using [O]DOC Policy guidelines." Pl.'s MSJ Resp. Ex. 1, at 32. There is no evidence that Plaintiff filed a Grievance or that Plaintiff pursued further relief on this Request to Staff from the ARA. *Cf.* Minyard HDC Aff.

- *Request to Staff of September 14, 2012*

Finally, Plaintiff submitted a September 14, 2012, Request to Staff requesting to be transferred to a kosher, rather than halal, diet. *See* S.R. Ex. 32 (Doc. No. 69-32) at 2. A staff member responded on October 4, 2012, that Plaintiff was receiving a halal diet "in regards to [his] religion." *See* S.R. Ex. 32, at 2. Attached to the response were: (1) a special diet request form submitted by Plaintiff on September 12, 2012, and denied the next day; (2) a memo to Plaintiff explaining that "Muslim" was not a faith group approved by ODOC to receive kosher meals; and (3) an excerpt from ODOC Policy Memorandum OP-030112, listing religions authorized to receive a kosher diet (Jewish, Messianic Jewish, House of Yahweh) and religions authorized to receive a halal diet (Muslim, Nation of Islam). *See* S.R. Ex. 32, at 3-5; S.R. Ex. 18 (Doc. No. 69-18) at 26 (OP-030112 Attach. E (eff. July 21, 2011)). There is no evidence in the record that Plaintiff filed a Grievance or otherwise pursued relief on this Request to Staff. *Cf.* Minyard HDC Aff.

*D. Plaintiff's Failure to Properly Exhaust Administrative Remedies*

As outlined above, Plaintiff filed numerous documents but never pursued a grievance through the full administrative process—specifically by submitting a timely, procedurally-correct Grievance followed by a timely and procedurally-correct Grievance Appeal—as required for prison officials to reach the merits of Plaintiff's complaint and for determination of Plaintiff's § 1983 and other federal-law claims by the Court. *See* 42 U.S.C. § 1997e(a). The mandatory administrative exhaustion requirement, *see Jones*, 549 U.S. at 211, applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust administrative remedies, Plaintiff may not file "an untimely or otherwise procedurally defective administrative grievance or appeal"; rather, Plaintiff must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *See Woodford*, 548 U.S. at 83-84, 90 (internal quotation marks omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Here, there is no reasonable dispute that Plaintiff never properly presented his relevant grievances to prison authorities "in accordance with the applicable procedural rules," such that the authorities were able to address the issues on the merits. *See Woodford*, 548 U.S. at 88, 90. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. As support for the entry of judgment to Defendants based upon the shortcomings outlined above,

Defendants have submitted sworn affidavits from an official in the office of the ARA. Minyard LLC Aff.; Minyard HDC Aff.; *see* Fed. R. Civ. P. 56(c). The ARA official states that he or she has access to inmate grievance files and that he or she has reviewed the files for Plaintiff. Minyard LLC Aff.; Minyard HDC Aff. Regarding the Law Library Claims, the ARA official states that Plaintiff "has not submitted a grievance or a[] grievance appeal to this office in regards to his reassignment to a job in the law library after receiving a misconduct report on July 5[,] 2012." Minyard LLC Aff. Regarding the Halal Diet Claims, the ARA official states that Plaintiff submitted an appeal of Grievance No. 12-374 to the ARA which "presented issues not included in the original grievance and was returned unanswered." *See* Minyard HDC Aff. Plaintiff "has not resubmitted a corrected grievance or grievance appeal on this issue." Minyard HDC Aff. The ARA official states that Plaintiff "has not made any application to file a grievance out of time" relevant to the Law Library Claims and notes no submissions to the ARA relevant to the Halal Diet Claims other than the deficient appeal of Grievance No. 12-374. *See* Minyard LLC Aff.; Minyard HDC Aff.

Plaintiff does not dispute Defendants' account of events with respect to their affirmative defense, but argues that his failure to exhaust administrative remedies should be excused because he was prevented from doing so by the actions of prison officials. *See* Pl.'s MSJ Resp. at 15. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Here, however, Plaintiff has not presented

credible evidence that prison officials hindered his ability to exhaust administrative remedies. *See generally* Fed. R. Civ. P. 56(c).

First, Plaintiff contends that the ODOC Grievance Process that was in place during the relevant time frame was "broken," "impaired," and "hindered offenders from exhaustion of remedies" because offenders could not track their Requests to Staff. *See* Pl.'s MSJ Resp. at 13-14. *See generally* OP-090124. According to Plaintiff, the current ODOC Grievance Process calls for a tracking or numbering system "to locate where the offender is at in the grievance process." *See* Pl.'s MSJ Resp. at 14. Plaintiff presents no evidence, however, explaining or demonstrating how this allegedly broken process specifically prevented him from exhausting his administrative remedies with respect to either his Law Library Claims or his Halal Diet Claims. Moreover, even assuming Plaintiff's exhaustion efforts were delayed by his lack of knowledge as to the status of his complaints, it is undisputed that Plaintiff never submitted a request to the ARA to file a Grievance out of time. *See* Minyard LLC Aff.; OP-090124 § XII; *cf.* Minyard HDC Aff.

Plaintiff also argues that his exhaustion attempts were "thwarted by defendants['] partial address of the 'RTS' and hindered or impeded his access to the grievance process on the return of his 365 days defendant Whitten would only state the misconduct convicted was dismissed." *See* Pl.'s MSJ Resp. at 15. Liberally construed, Plaintiff here contends that he was prevented from exhausting his remedies on his Law Library Claims because he did not receive an adequate or apposite response to the Request to Staff filed on December 3, 2012. In that Request to Staff, Plaintiff alleged that, although the disciplinary misconduct he received after the July 2012 prison fight had been dismissed,

Plaintiff's record still needed to be corrected to return 365 days of credit toward his release date and that he should be returned to his former pay grade. *See* S.R. Ex. 11, at 2-3. A staff member responded on December 6, 2012, "It has been dismissed."[13] *See* S.R. Ex. 11, at 2 (capitalization altered). Whether this response was satisfactory to Plaintiff, however, is immaterial, because Plaintiff did not undertake the necessary steps to pursue subsequent relief. There is no evidence in the record that Plaintiff filed a Grievance relating to this response from staff or that Plaintiff submitted any pertinent request for relief to the ARA. *See* Minyard LLC Aff.

Further, the fact that Defendants returned deficient Grievances and one deficient Grievance Appeal to Plaintiff without answering them does not excuse Plaintiff from the requirement that he exhaust administrative remedies. The ODOC Grievance Process expressly authorizes prison officials to return Grievances and Grievance Appeals unanswered if the inmate fails to follow instructions. *See, e.g.*, OP-090124 §§ II(C) (directing that an untimely Grievance "will be returned unanswered"), V(A)(7) (stating that if offender fails to follow instructions the Grievance "may be returned unanswered for proper completion"), VII(B)(5) ("Grievances and grievance appeals which present more than one issue or which are not filed in accordance with this procedure will be

_____

[13] The Request to Staff is addressed to "Mr. Whitten, Warden of Security." S.R. Ex. 11, at 2. Although the responding staff member provided only a signature and not a printed name, the signature is essentially identical to the signature appearing on the affidavit of Defendant Rick Whitten that was filed as part of the Special Report. *Compare* S.R. Ex. 11 (Doc. No. 69-11) at 2, *with* S.R. Ex. 9 (Doc. No. 69-9) at 2.

returned unanswered."); *see also Little*, 607 F.3d at 1249 (noting that "the prison's procedural requirements define the steps necessary for exhaustion"). "[D]efendants did not make the exhaustion process unavailable to [Plaintiff] by returning his documents unanswered." *See Thomas v. Parker*, 609 F.3d 1114, 1118 n.2 (10th Cir. 2010).

A pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This liberal construction, however, does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. *Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994) (citing *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990)). Having reviewed both parties' submissions, Plaintiff's declarations and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact" on the issue of whether Plaintiff exhausted his administrative remedies. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). The undisputed material facts show that Plaintiff did not properly submit a Grievance Appeal relating to his allegations against the Defendants to the ARA as required to complete the ODOC Grievance Process. *See Woodward*, 548 U.S. at 90; *cf. Jackson v. Workman*, 391 F. App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal). Substantial compliance with ODOC's "'deadlines and other critical procedural rules'" does not suffice under the PLRA. *Craft v. Null*, 543 F. App'x 778, 779 (10th Cir. 2013) (quoting *Woodford*, 548 U.S. at 90); *Jernigan*, 304 F.3d at 1032.

None of the evidence in the record, even when construed in favor of Plaintiff,

creates a genuine question of fact that would prevent the conclusion that Plaintiff failed to exhaust his administrative remedies prior to commencing his federal claims against Defendants. "[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of the MSJ Defendants on Plaintiff's claims against them.[14]

> E. *Application of Determination on Exhaustion of Administrative Remedies to Plaintiff's Remaining Claims Against Justin Jones*

Defendant Justin Jones, who filed a separate Motion to Dismiss, did not seek summary judgment explicitly on the basis of Plaintiff's failure to exhaust administrative remedies. Nevertheless, because the PLRA requires that Plaintiff exhaust administrative remedies before pursuing claims against Defendant Justin Jones, and the above analysis of Plaintiff's efforts to exhaust equally applies to Plaintiff's claims against Defendant Justin Jones, the undersigned recommends that summary judgment be granted in favor of Defendant Justin Jones on all individual-capacity § 1983 claims and all official-capacity claims seeking prospective declaratory and injunctive relief asserted against him. *See* 42 U.S.C. § 1997e(a); Am. Compl. at 7, 13-31.

---

[14] In light of this recommendation, the undersigned need not address the MSJ Defendants' alternative arguments in support of summary judgment. Likewise, because the finding of nonexhaustion is applied to Defendant Justin Jones' remaining claims, as discussed in Part II(E), the undersigned need not address Mr. Jones' request for dismissal on alternative grounds.

Courts have extended the applicability of a dismissal or entry of summary judgment to a defendant who did not separately assert the relevant affirmative defense in a pleading or motion, absent any showing of harm to the plaintiff. *See, e.g.*, *Van Pier v. Long Island Sav. Bank*, 20 F. Supp. 2d 535, 540 n.6 (S.D.N.Y. 1998) (deeming amended the answer of defendant who failed to raise the defense therein and noting that "plaintiff was aware that all defendants were taking similar positions"); *P&E Elec., Inc. v. Util. Supply of Am., Inc.* 655 F. Supp. 89, 95 n.1 (M.D. Tenn. 1986) (dismissing action as to all defendants where the affirmative defense was raised by the moving defendants and responded to by the plaintiff). Here, "[t]he issues raised by [the nonexhaustion] defense would be identical" as to both Defendant Justin Jones and the MSJ Defendants. *See P&E Elec.*, 655 F. Supp. at 90 n.1. Moreover, although summary judgment was not expressly sought therein, the dispositive motion filed by Defendant Justin Jones specifically outlined the numerous shortcomings in Plaintiff's exhaustion efforts, and Plaintiff's response to that motion squarely addressed, argued, and presented evidentiary materials to support Plaintiff's allegedly proper exhaustion of remedies.[15]  *See* Def. J. Jones' MTD

---

[15] Because none of the Defendants has yet filed a responsive pleading, there is no issue of possible waiver of the affirmative defense of nonexhaustion. *See* Fed. R. Civ. P. 7(a), 8(c)(1), 12(b); Order of Jan. 11, 2013 (Doc. No. 20). Further, courts consistently hold that an affirmative defense may be asserted at the summary judgment stage as long as the plaintiff is not harmed by delay or otherwise prejudiced. *See, e.g.*, *Hess v Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729-30 (7th Cir. 2007); *In re Aramark Sports & Entm't Servs., LLC*, No. 2:09-CV-637-TC, 2012 WL 3776859, at *3 (D. Utah Aug. 29, 2012) (citing cases); *Van Pier*, 20 F. Supp. 2d at 540 n.6 (citing cases).

at 2-5; Pl.'s MTD Resp. at 6-7, 19; Pl.'s MTD Resp. Ex. 1 (Doc. No. 83-1), at 7.

Plaintiff will suffer no undue prejudice or delay from the Court's extension of its findings and conclusions regarding exhaustion to the claims against Defendant Justin Jones. Summary judgment therefore should be entered in favor of Defendant Justin Jones on those claims remaining for disposition as well as the MSJ Defendants.

## III. Whether Plaintiff Is Entitled to a Preliminary Injunction as "Sanctions"

Plaintiff has filed a motion seeking "injunctions and/or temporary restraining orders," which he characterizes as "sanctions," for actions of certain Defendants and some nonparties. *See* Pl.'s Mot. Prelim. Inj. (Doc. No. 90). Plaintiff asserts that these individuals are responsible for the "mishap and misdirection" relevant to Plaintiff's legal mail at LCF, including issues that arose regarding the service by mail of Defendant Ms. Schuler, as discussed below. *See id.* at 1-2. Plaintiff seeks an order of unspecified duration from the Court preventing delay and misplacement of incoming and outgoing legal mail handled by the LCF mailroom staff. *See id.* at 1-5.

As a threshold matter, Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b). Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney." *See* Fed. R. Civ. P. 65(b)(1). Because Defendants here had both notice and an opportunity to respond to Plaintiff's motion for preliminary injunctive relief, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction. *See, e.g.*, *Kan.*

*Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951, at 276-77 (3d ed. 2013).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the movant generally must satisfy four elements: (1) a substantial likelihood that he will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Id.* Although the Court will construe a pro se litigant's filings liberally, requests for relief must be supported, at a minimum, by factual allegations, which require no special legal training to provide. *See Hall*, 935 F.2d at 1110 & n.3 (stating rule of liberal construction "applies to all proceedings involving a pro se litigant"); Fed. R. Civ. P. 7(b)(1)(B) (requiring requests for a court order to "state with particularity the grounds for seeking the order").

A preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The Court may not enter a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg*,

No. CIV-09-320-C, 2010 WL 567998, at *1, *2 & n.3 (W.D. Okla. Feb. 11, 2010) (citing

*Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A]

preliminary injunction may never issue to prevent an injury or harm which not even the

moving party contends was caused by the wrong claimed in the underlying action.")).[16]

Thus, "the movant must establish a relationship between the injury claimed in the party's

motion and the conduct asserted in the complaint." *Little*, 607 F.3d at 1251 (internal

quotation marks omitted); *see also Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185

(10th Cir. 1975) ("[The movant] must [establish his right to such relief] by clear proof

that he will probably prevail when the merits are tried, so to this extent there is a relation

between temporary and permanent relief.").

Plaintiff's Amended Complaint raises no claims relevant to his legal mail issues

and seeks no relief on those grounds, which are the only grounds raised in his request for

a preliminary injunction. *Compare* Am. Compl., *with* Pl.'s Mot. Prelim. Inj. Plaintiff

therefore has not shown the requisite relationship between Defendants' conduct asserted

in the Amended Complaint and the injury claimed in his Motion for a Preliminary

---

[16] Other circuits are in accord. *See, e.g., Alabama v. U.S. Army Corps of Eng'rs*, 424
F.3d 1117, 1134 (11th Cir. 2005) ("[I]njunctive relief must relate in some fashion to the
relief requested in the complaint."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.
1994) (denying a motion for temporary relief "based on new assertions of mistreatment
that are entirely different from the claim raised and the relief requested" in the plaintiff's
§ 1983 lawsuit); *Stewart v. U.S. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (holding that the
district court lacked jurisdiction to issue preliminary injunction where movant had
presented issues that were "entirely different from those [that] were alleged in his original
complaint").

Injunction. *See Little*, 607 F.3d at 1251. Thus, a preliminary injunction would be inappropriate to address the allegations regarding the LCF mailroom officials, and the Court should deny the request for injunctive relief as presenting issues and seeking relief separate from and unrelated to the allegations of Plaintiff's Amended Complaint.

## IV.    Whether Claims Against Defendant "Ms. Schuler" Should Be Dismissed

Plaintiff's Amended Complaint names "Ms. Schuler, the GEO Group Inc. Dietician" as a defendant and raises factual allegations against Defendant Schuler regarding Plaintiff's Halal Diet Claims. *See* Am. Compl. at 1, 10, 13, 29-31. Plaintiff's Amended Complaint was filed on March 27, 2013. *See* Am. Compl. On April 8, 2013, summonses were issued at Plaintiff's request for each of the 10 Defendants added to the four named in the original complaint, including Ms. Schuler. *See* Pl.'s Request for Issuance of 10 Summonses (Doc. No. 42); Issuance of Summonses (Doc. No. 43).

By May 2, 2013, Plaintiff had filed returns showing that service had been perfected upon all of the Defendants, with the exception of Defendant Schuler. *See* Doc. Nos. 49-54. As to Defendant Schuler, Plaintiff submitted only a page bearing a hand-written statement that "certified return rec[ei]pt was lost by Mailroom Staff" and an image of a receipt reflecting that delivery of certified mail to "Ms. Schuler" was purchased (but not showing that delivery had been completed or that Ms. Schuler actually had received the mailing). *See* Doc. No. 54, at 3 (capitalization altered). The docket reflected no further action taken by Plaintiff thereafter to have the summons and Amended Complaint served upon on Defendant Schuler. The 120-day deadline for service to be perfected upon Defendant Schuler under Federal Rule of Civil Procedure

4(m) passed on July 25, 2013. Accordingly, the Court issued an Order on August 5, 2013, advising Plaintiff that dismissal of the action without prejudice as to Defendant Schuler would be recommended unless Plaintiff showed good cause for his failure to serve Defendant Schuler within 120 days of the filing of the Amended Complaint in accordance with Rule 4(m). *See* Order to Show Cause of Aug. 5, 2013 (Doc. No. 86); Fed. R. Civ. P. 4(c), (e)(1), (m); Okla. Stat. tit. 12, §§ 2004(C), 2005(B); Fla. Stat. §§ 48.011, .021, .031.

Plaintiff timely responded to the Order, representing to the Court that the LCF mailroom staff was to blame for him not receiving the signed delivery receipt and thereby to blame for Plaintiff's failure to file proper proof of service. *See* Pl.'s Resp. to Order to Show Cause (Doc. No. 88). Specifically, Plaintiff stated that the mailroom "has lost, withheld and/or prolonged plaintiff['s] and other inmates['] legal mail causing delays, which resulted in injuries for some." *See* Pl.'s Resp. to Order to Show Cause at 2. Plaintiff attached documentation in which LCF officials confirmed that there had been some delay and mishandling of legal mail and that there had been an item of certified mail sent to Ms. Schuler on April 11, 2013. *See* Pl.'s Resp. to Order to Show Cause Ex. 1 (Doc. No. 88-1), at 1, 2, 9; *see also* Pl.'s Letters (Doc. Nos. 87, 89).

Although appearing pro se, Plaintiff is responsible for having each Defendant served with a summons and the Amended Complaint. *See* Fed. R. Civ. P. 4(c)(1); *see also DiCesare v. Stuart*, 12 F.3d 973, 980 (10th Cir. 1993) (stating that even though plaintiff was pro se, he was "obligated to follow the requirements of Fed. R. Civ. P. 4" (citation omitted)). Over one year after the filing of his Amended Complaint, however, Plaintiff

has not filed new proof of service or otherwise shown that proper service has been made upon Defendant Schuler. Plaintiff's response to the Court's Order to Show Cause decries the actions of LCF officials but otherwise does not show adequate cause for this delay. It is clear from Plaintiff's filing that the LCF mailroom has been responsible for at least some amount of delay and, possibly, a misplaced delivery receipt for Defendant Schuler's summons and documents in April or May of 2013. *See* Pl.'s Resp. to Order to Show Cause & Ex. 1. Even so, despite notice of the need to do so, neither Plaintiff's response nor the record reflects any further attempt by Plaintiff to have service effected upon Defendant Schuler. Plaintiff therefore has not shown "good cause for the failure" as required for a mandatory extension of the time allowed for service. *See* Fed. R. Civ. P. 4(m).

Notwithstanding Plaintiff's failure to show good cause, the undersigned still must consider whether a permissive extension of time to complete service of process is warranted. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). The Tenth Circuit has noted that a permissive extension of time may be warranted where "policy considerations might weigh in favor of granting a permissive extension of time." *Id.* at 842. Additionally, as to pro se litigants, "[t]he district court should also take care to protect *pro se* plaintiffs from consequences of confusion or delay attending the resolution of an *in forma pauperis* petition." *Id.* at 842 n.8 (internal quotation marks omitted).

Here, the undersigned finds no policy considerations meriting additional time for service, and no prejudice to Plaintiff in the denial of such time. Even if Defendant Schuler were to be properly served, she ultimately would be entitled to summary

judgment in this action based on Plaintiff's failure to exhaust administrative remedies. *See supra* Part II.  Further, there is no apparent confusion or delay justifying an extension as Plaintiff's Amended Complaint was filed *after* Plaintiff was denied leave to proceed *in forma pauperis*.  *See* Order Denying IFP App. of Jan. 9, 2013 (Doc. No. 16); Am. Compl. (filed Mar. 27, 2013).

All claims against Defendant Schuler therefore should be dismissed without prejudice.  *See* Fed. R. Civ. P. 4(m); *see, e.g.*, *Sena v. Wackenhut Corp.*, 3 F. App'x 858, 861 (10th Cir. 2001).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that: (1) Defendant Justin Jones' Motion to Dismiss (Doc. No. 72) be GRANTED IN PART and that Plaintiff's claims for money damages against Defendant Justin Jones in his official capacity be dismissed without prejudice; (2) the MSJ Defendants' Motion for Summary Judgment (Doc. No. 70) be GRANTED and summary judgment be entered in favor of the MSJ Defendants on Plaintiff's claims against them; (3) summary judgment be entered in favor of Defendant Justin Jones on all remaining claims against him; (4) Plaintiff's motion for preliminary injunctive relief (Doc. No. 90) be DENIED; and (5) all claims against Defendant "Ms. Schuler, the GEO Group Inc. Dietician," be dismissed without prejudice.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by July 10, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties further are advised that

failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned magistrate judge in the present case.

ENTERED this 19th day of June, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE